We have six cases on our calendar this morning, one from the PTO, three from district courts, one from the Court of Federal Claims, and one from the Merit Systems Protection Board. The last two are being submitted on the briefs and will not be argued. Our first case is Estech Systems v. Vidal, 2023-12-42, Mr. Wittenzelder. Mr. Wittenzelder, may it please the court. As we did in the briefing, I'll start today by discussing Independent Claim 4, which requires that the telecommunications device in the independent claims is an IP telephone. That was a term that was construed by the board to have specific functionality, that functionality being communicating multimedia traffic using IP telephony technology. That's Appendix 9 in the Final Written Decision. There are really two issues to unpack here. The first is the substance of the Final Written Decision versus intervener's characterization of it, and second is the lack of substantial evidence to support the Final Written Decision. As to the first issue, intervener's briefing on the issue argues that the board found that Chang's workstation coupled with the telephone in Chang satisfies the IP telephone limitation. That is not correct. The Final Written Decision speaks in terms of Chang's workstation only. There's a reason for that because it tracks with the petition. The petitioner recognized that for the telecommunications device limitation in Claim 1, it was broader, and so they pointed to the telephone in Chang, the workstation in Chang, or the two being co-located, essentially sitting on the same desk. And that is Appendix 108 and 109. Isn't that multiple options then? It is. That the board could choose from, right? It certainly is for the independent claim. But then what happens when we get to dependent claim 4, the petitioner recognized two of those three options cannot meet the IP telephone limitation because it's narrower. And so the board's Final Written Decision tracks with that as well, which is why it's our position that pointing to the combination is not in the Final Written Decision. So interveners' reliance here on that to maintain the Final Written Decision is not correct. Going beyond that, because the Final Written Decision is based solely on Chang's workstation, there is not sufficient or substantial evidence to support the Final Written Decision. Again, the key issue is that under the court's construction of an IP telephone, Chang's workstation must communicate multimedia traffic using IP telephony technology. There's a statement in the board's opinion at Appendix page 33 where they say that Chang's workstation is co-located with the PBS telephone and performs telephone functions. Why isn't that sufficient? Apologies, Your Honor. I'm just finding it. I believe it's offset. It's stating that, yes, the workstation is co-located. But in terms of actually, and it's offset with commas, I believe, on either side. But when the board actually discusses the relevant functionality that is supposed to be that communicating multimedia traffic using IP telephony technology, it's always in terms of the workstation. And then that's also, again, consistent with what the petitioner recognized in the petition, which is limited to the workstation meeting this limitation. Of course, what a reference discloses is a question of fact subject to the substantial evidence standards. So you're working uphill. I am. I brought my pickaxe, Your Honor. So as to the evidence that's at hand, Chang describes a workstation as performing telephone functions. And there are two citations that the board relies on in Appendix 33 and 34. One is from the 298 patent, which is wholly improper. The 298 patent is not prior art to itself. And more specifically, within the 298 patent, that citation is not in the background section. It's in the detailed description of the embodiment. So it's described. Are you talking about where the 298 patent says that an IP telephone could be implemented with a workstation? Correct, Your Honor. That's in the detailed description of the embodiments. That is what Aztecs inventors invented, not a description of the prior art available at the time. The other citation is column 5, or I should say page 5, lines 28 through 32 of Chang, which is Appendix 864. And that disclosure merely states that the workstation can, quote, initiate telephone functions from the workstation, such as dialing a call. In other words, the workstation is a remote control for that co-located telephone. It itself is not making the phone call. It's very much like a TV remote. When I use my TV remote, I can turn on the TV, I can change the channels. I'm initiating watching TV, but the remote is not displaying the program to me. So the remote is not a television. And it's the same thing with Chang's workstation. It controls the telephone to make calls, but it does not itself communicate the multimedia traffic using IP telephony technology as required by the board's construction. And we know this for really several reasons. First reason is every embodiment in Chang includes a co-located telephone. That's because the workstation itself cannot actually conduct a call. Second, Chang actually disparages workstation-based telephony. So this is Appendix 860, which is page... Appendix 860. Or page one, lines 14 through 31. And this is relied upon by Intervenor, but it actually goes to disparage this PC-to-PC telephone technology. It says it's limited by the need to be logged into a PC and the internet to place or receive a call. It says the sound quality is often degraded because of packet loss and the use of low-quality PC speakers and microphones. So it's disparaging it. It's also worth noting that the citation comes from the background of the invention in Chang. This is Chang saying, this is what's out there. We're not doing that. We're going to co-locate a phone with every instance with this workstation. So the phone is handling the actual audio, which is the communicating multimedia traffic using IP telephony technology, not the workstation. Workstation is adding those remote control features on top of it. So let's be clear. So your entire argument really rests on a view that the board was lying on the workstation alone, not the workstation with the telephone, right? With respect to this argument, yes. We also contest that it would have been obvious to combine the two devices into a single, I should say Chang's workstation and Chang's telephone into a single device. So even there, the functionality would be present, Your Honor, because the telephone is making the call. But they're, again, separate devices, whereas the claim calls for an IP telephone. The Chang itself makes it very clear they're always separate devices. They're associated with each other. But can't they be considered, since they're co-located and function together, can't they be considered as an IP telephone? No, Your Honor. When Chang discusses it, they're separate devices. Even in the board's discussion, they're separate devices. And I think the issue that comes with the combination is that there's never actually an argument about combining them. It's always, there's two devices sitting here and we are splitting the functionality between them. But the claim calls for an IP telephone, one device that encompasses all of the limitations. And that's actually part, I think, again, why in the petition you do not see the phone itself as dependent claim four because it does not encompass many of the other limitations like having a display screen or having the keys necessary to access the directory. So they really are separate devices. There's no motivation to combine discussed either in the petition or the final written decision other than to say they're sitting on the same desk. I think that they're viewing them as the same element together. It might be that the screen isn't on the telephone, but they're co-located so the screen is on the monitor. Right. The claim is still calling for a single device with all of those functions in it. And that's also how it's disclosed repeatedly throughout the 298 patent. There are no instances, there's really a separation there where the 298 patent is always disclosing this in terms of one unified device as opposed to two separate devices where we're splitting the functionality and circuitry between the two. Do you view that as a claim construction issue? I do not. I think it's in the plain language of the claim, but certainly I think if we were to construe the term within the context of the intrinsic record, it certainly would further support that reading of the claim language. Next, I would like to address the limitations pertaining to how the telecommunications device obtains a list of extensions. I only have about a minute and a half before I get to my rebuttal time, but I did want to note, because it wasn't necessarily clear in the briefing, that the construction of where the server sits and whether one list versus all the lists have to sit on that same server and the second LAN is not necessary to reverse the final written decision. That's because Chang is silent regarding how the lists in the directory are accessed. Completely silent. There's discussion of an enterprise directory. If we're looking at figure 3A of Chang, that's the big circle in the middle. And there's discussion of the gateway. Isn't there expert testimony interpreting Chang's disclosure to meet this claim element, though? There is, Your Honor. It didn't seem unreasonable to me, right? And the issue here is whether there's substantial evidence to support the fact-finding made by the board. Yes, Your Honor. So the testimony was, I would say, tempting to fill in the blanks with Chang, if you will. I think it would be a closer case if the petitioner had actually argued, let's modify Chang to do this. But what the petitioner and petitioner's expert were saying were, this disclosure is in Chang and it's very clearly silent on it. Chang discusses these gateway servers reaching out to the enterprise directory to pull the list down, not the actual workstations behind that gateway. And so to the extent there's circuitry, first circuitry is required by the claim, grabbing that list over the wide area network. For example, the internet. It's that gateway server. The issue is that the petition and the final written decision identify only the workstation as containing that first circuitry that is supposed to be reaching out and grabbing that list. So Chang simply does not disclose that. I see, Your Honor, I've gone into my bubble time, so I'd like to reserve that unless the panel has any other questions. We will save it for you. Thank you. Mr. Foreman. Thank you, and may it please the Court. I want to touch on the first issue that Apollon talked about, which is whether the Board identified the workstation or the workstation plus the telephone as the IP telephone. I think Judge Stoll had it right when you look at Appendix Page 33, where the Board says, Petitioner demonstrates that Chang's workstation is co-located with the PBX telephone and performs telephone functions. It's our view that that's sufficient to show that the Board relied on the combination of the two. And I think it helps to walk through the party's briefing on this that really emphasizes that. In the petition, and this is on Appendix Page 128 to 129, Petitioner essentially says exactly what the Board says in its decision about Claim 4. And the patent owner response argued that, well, the workstation alone does not serve as the IP telephone, and this is on Appendix Page 332. But then in the reply, the Petitioner came back and explained, no, that's not our position. Our position is that it's the combination of the two. And this is Appendix Page 384, where the Petitioner says, it is the combination of the workstation and associated telephone, and not just the workstation alone that makes Chang's IP telephone. And then finally, we get to the SIR reply. Did you say page 384? 384, correct. And if you look at the SIR reply from the patent owner on Appendix Page 409, the patent owner appears to acquiesce to this position. The patent owner does not challenge the view that it's the combination of the two. The patent owner merely points to their earlier argument about why the combination of the two cannot equate to an IP telephone. So as far as looking at the briefing, it seems like this was not a point of contention by the time we got to the SIR reply, that everyone was accepting that it was the combination of the two that represented the IP telephone. And if the patent owner believed that the Petitioner was raising a new argument in reply, the patent owner had the ability to seek to strike that argument or say something in their SIR reply about it, and they chose not to do so. So I think that kind of ends that issue. On the question of whether the combination of the two can equal the IP telephone, I think it's, you know, you would ask if it's a claim construction dispute, and I agree that it's not, because if you look at the claim construction that the parties agreed on, which is on appendix page 8, it says that, excuse me, appendix page 9, the board's construction of IP telephone is any apparatus, device, system, or computer that can communicate multimedia traffic using IP telephony technology. You notice the word system is in there, which to me, as opposed to device, which to me implies that there's no requirement that it be one physical box that contains the two. And the patent owner accepted this construction, and so I don't see how they can walk away from that. So it is a claim construction issue, it's just already been decided. Yeah, sure. I guess on the last issue I'll touch on is this issue about the servers. I think that the patent owner was making this issue much more complicated than it needed to be. The claim requires that there's first LAN, a second LAN, and a third LAN. And the only thing it says about storing the extensions is that the server in the second LAN has to store the extensions for the second LAN. And if you look at Chang, Chang discloses exactly that. Chang is a distributed system that shows that each server stores the portion of the white pages associated with that server. And it's the figure 3A on appendix page 950. And it shows that the physical partitions, which is P1 prime, P2 prime, et cetera, store the portion of the white pages associated with each respective server and each respective LAN. So as the board found, Chang is doing exactly what the claim requires. If there are no more questions, I'd be happy to sit down. Thank you. No one ever loses points for not using up all their time. Mr. Whitten-Zelda has a little time. May I please record? Your Honors, I wanted to briefly respond to the last point from counsel. The language of this claim is more complicated than he wants to make it out. We're not discussing where the list is being stored. That was not my argument. My argument was, how is it accessed? Claim two, or claim one, and this is column 16, lines 10 through 11, requires, quote, that the list is accessed by the first circuitry across the LAN. So the fact that there is an enterprise directory in the center of Chang, which would be accessed across a wide array of servers, is not sufficient. You actually have to show that Chang, the workstation, accesses that directory. It certainly gets information, a copy of information that was stored there, but Chang very clearly discloses that the workstation is actually not doing that. It's accessing the local gateway server, which would be in the local area network, and not go across the wide area network. At appendix 877, and this will be page 18, line 1, and for reference for the court, we did determine that in our briefing, I believe we had cited this as page 20, line 1. It was actually supposed to be page 18, line 1. It states that the enterprise directory is a source of the white pages, but then it goes on to say, the information is separately maintained in the gateway database, because commercially available enterprise directories are not easily searchable or indexed. The gateway database is indexed to facilitate the availability of the data, and that data has to be passed through the gateway before it's even usable by the workstation. And so the fact that there's silence as to exactly where the workstation goes, coupled with the fact that Chang itself is telling us the workstation cannot use the data in the enterprise database without it first going to the gateway database, shows that the limitation is not met. Thank you, counsel. Thank you both, counsel. The case is submitted.